

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 17, 1950

Hon. Robert S. Calvert               Opinion No. V-1086
Comptroller of Public Accounts
Austin, Texas                        Re: Applicability of production
                                         taxes to cycled residue gas
Dear Mr. Calvert:                        when reproduced for sale or
                                         use.

Your request for an opinion reads as follows:

"We desire an Opinion from your Office as
to whether or not tax levied under Article 7047b,
R.C.S. 1925 applies to residue gas remaining after
the gas has been cycled when such residue gas is
later reproduced and sold or used, assuming that
the particular sand has been completely cycled."

We assume that in using the expression, "assuming
that the particular sand has been completely cycled," you mean
that all of the gas originally contained in a particular sand
has been produced and run through a cycling plant which re-
moved the liquid hydrocarbon content and that the residue or
dry gas has been reinjected into the gas producing formation so
that all the gas now contained in the sand has been theretofore
produced. We desire to point out to you that these facts must
necessarily be assumed in that we know of no way in which such
facts could be satisfactorily established or proved.

Subsections (1) and (2) of Section 1 of Article 7047b,
V. C. S., provide:

"Section 1. (1) There is hereby levied an occu-
pation tax on the business or occupation of producing
gas within this State, computed as follows:

"A tax shall be paid by each producer on the
amount of gas produced and saved within this State
equivalent to five and two-tenths (5.2) per cent of
the market value thereof as and when produced; pro-
vided that the amount of such tax on sweet and sour
natural gas shall never be less than eleven-one
hundred fiftieths (11/150) of one (1) cent per one
thousand (1,000) cubic feet.

"In calculating the tax herein levied, there

shall be excluded: (a) gas injected into the earth in this State, unless sold for such purpose; (b) gas produced from oil wells with oil and lawfully vented or flared; and, (c) gas used for lifting oil, unless sold for such purpose.

"(2)   The market value of gas produced in this State shall be the value thereof at the mouth of the well; however, in case gas is sold for cash only, the tax shall be computed on the producer's gross cash receipts.   In all cases where the whole or a part of the consideration for the sale of gas is a portion of the products extracted from the producer's gas or a portion of the residue gas, or both, the tax shall be computed on the gross value of all things of value received by the producer, including any bonus or premium; provided that notwithstanding any other provision herein to the contrary, where gas is processed for its liquid hydrocarbon content and the residue gas is returned by cycling methods, as distinguished from repressuring or pressure maintenance methods, to some gas producing formation, the taxable value of such gas shall be three-fifths (3/5) of the gross value of all liquids extracted, separated and saved from such gas, such value to be determined upon separation and extraction and prior to absorption, refining or processing of such hydrocarbons and the quantity of the production shall be measured by the total yield of the processing plant from such gas." (Emphasis added.)

With your opinion request you enclosed a letter from an attorney representing the taxpayer, in which he contended that no occupation tax is due upon the reproduction of the residue gas on the ground that an occupation tax was paid on such gas at the time of its original production.   We agree that no tax would be due on reproduced residue gas if in fact an occupation tax was paid thereon at the time of its first production.   We so held in Opinion No. O-4100, dated December 3, 1941.   However, it is our opinion that an occupation tax was not paid upon the residue or dry gas at the time of its original production.

The production of gas that is processed by cycling operations is taxed under the statute on the basis of sixty per cent of the gross value of the liquids extracted.   This amounts to a legislative declaration that, for tax purposes, the reasonable cost of conducting cycling operations shall be presumed to be equal to forty per cent of the value of the liquids extracted. If the residue or dry gas is injected into a gas producing forma-

tion in the earth, it not being sold for such purpose, the market value thereof was not included by the Legislature in fixing the amount of the tax, in that only three-fifths of the market value of the liquid hydrocarbons extracted was provided for by the Legislature in determining the amount of the tax. Natural gas is either wet gas or dry gas. In cycling operations it seems clear that the Legislature has not taxed the residue or dry gas which has been injected back into the earth, thereby resuming its status as a natural resource of the State. According to the plain wording of Subdivision (2) of Section 1 of said Article 7047b, if the gas in question, after being stripped of its hydrocarbon content, had not been injected back into the earth, but had been either sole or used by the producer, the tax due thereon would have been one hundred per cent of the value of the liquid hydrocarbon content plus the market value of the residue gas.

You will note that under the taxing article in question a tax is only levied "on the amount of gas produced and <u>saved</u>." You will further note that Section 1 provides, "In calculating the tax herein levied there shall be excluded: (a) <u>gas injected into the earth in this State, unless sold for such purpose</u>; (b) gas produced from oil wells with oil and lawfully vented or flared; and, (c) gas used for lifting oil, unless sold for such purpose." Each of the foregoing exclusions relates to a use of the gas from which the producer has realized no profit. In Opinion No. V-335, dated August 13, 1947, we held that the provisions of Section 1 are in line with the other provisions of Article 7047b, which, when read as a whole, reveal a legislative intent to tax the business of producing gas, i.e., producing gas for profit. We are of the opinion that gas in order to be saved within the meaning of Section 1 must have been produced and used for profit and that gas that has been injected into the earth, unless sold for such purpose, a profit thereon being realized, is not the production and saving of the gas which the Legislature intended to tax.

In our Opinion No. O-4100 we held that no tax was due on gas which was reproduced after injection into the earth; however, the gas there injected was "gas upon which a production tax . . ./had/ already been paid." In the case of cycled gas, we are of the opinion that no production tax has in fact been paid on the dry portion of the wet gas and that upon reproduction thereof, if produced for profit, that is, either sold or used by the producer, the residue gas is taxable under one or more of the statutory definitions of the term "market value" as contained in Subsection (2) of Section 1 of Article 7047b. It is evident that the Legislature expressly excluded from the calculation of the gas production tax, gas injected into the earth in this State, unless sold for such purpose, for the reason that

such gas was of no beneficial use to the producer and after in-
jection resumes its status as a natural resource and would be
subject to the tax upon reproduction.

### SUMMARY

Residue gas, injected into a gas producing
formation in the earth in cycling operations, upon
being reproduced and saved is subject to the gas
production tax levied under Article 7047b, V.C.S.

Yours very truly,

PRICE DANIEL
Attorney General

By s/W. V. Geppert
W. V. Geppert
Assistant

WVG/mwb/amm/wc

APPROVED:

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant